Derrick Braaten (*pro hac vice*)
Kai B. Thorsgard (MT #14033)
BRAATEN LAW FIRM
109 N 4th St., Suite 100
Bismarck, ND 58501
Tel:   701-221-2911
derrick@braatenlawfirm.com
kai@braatenlawfirm.com

Matthew J. Kelly
TARLOW, STONECIPHER, WEAMER, & KELLY, PLLC
1705 West College St.
Bozeman, MT 59715
Tel:   406-586-9714
mkelly@lawmt.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| GIACOMETTO RANCH INC., a Montana Corporation, | CASE NO._____ |
| Plaintiffs, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| EXXON MOBIL CORPORATION, a New Jersey Corporation, DENBURY INC., a Delaware Corporation, DENBURY ONSHORE, LLC, a Delaware Company, and DENBURY OPERATING COMPANY, a Delaware Corporation, | |
| Defendants. | |

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

I.   PARTIES ........................................................................................................1

II.  JURISDICTION AND VENUE ....................................................................3

III. FACTUAL ALLEGATIONS ..........................................................................3

    A.   The Giacometto Ranch ...........................................................................3

    B.   Related Procedural Background ..............................................................4

    C.   Relevant Geological Facts .......................................................................4

    D.   The Claims in the Preceding Litigation ..................................................6

    E.   The Muddy Unit Agreement ...................................................................7

    F.   The Minnelusa 2 Well .............................................................................9

    G.   The Minnelusa 3 Well ...........................................................................10

    H.   The Minnelusa 4 Well ...........................................................................12

IV.  CLAIM...........................................................................................................14

    1.   Trespass ..................................................................................................14

V.   PRAYER FOR RELIEF ...............................................................................14

VI.  DEMAND FOR JURY TRIAL .....................................................................15

i

## I.     PARTIES

1.     Plaintiff Giacometto Ranch Inc. is a Montana corporation in good standing, incorporated in 1975, with its principal place of business in Powder River County, Montana, and whose registered agent is Tom Giacometto, 1647 Ranch Creek Road, Broadus, MT 59317.

2.     Defendant Exxon Mobil Corporation is a corporation organized and existing under the laws of the State of New Jersey. The address of the corporation's registered office is 830 Bear Tavern Road, West Trenton, New Jersey 08628-1020. The name of the corporation's registered agent at this address is Corporation Service Company. Exxon Mobil Corporation's principal place of business is 22777 Springwoods Village Parkway, Spring, Texas 77389.

3.     Defendant Denbury Onshore, LLC, is a Delaware limited liability company authorized to do business in the state of Montana. Denbury Onshore, LLC's principal place of business is 5320 Legacy Drive, Plano, TX 75024, and its registered agent in Montana is CT Corporation System, 3011 American Way, Missoula, MT 59808.

4.     Defendant Denbury Operating Company is a Delaware corporation authorized to do business in the state of Montana. Denbury Operating Company's principal place of business is 5320 Legacy Drive, Plano, TX 75024, and its registered

agent in Montana is CT Corporation System, 3011 American Way, Missoula, MT 59808.

5.      Defendant Denbury Inc. is the ultimate parent company of Denbury Onshore LLC and Denbury Operating Company and is a corporation organized and existing under the laws of the State of Delaware. Denbury Inc.'s principal place of business is 5851 Legacy Circle, Suite 1200, Plano, Texas 75024. The address of its registered office in the State of Delaware is 1209 Orange Street, Wilmington, Delaware 19801, County of New Castle. The name of the registered agent of the Corporation at this address is The Corporation Trust Company.

6.      Denbury Inc. filed a Notification of Late Filing on Form 12b-25 with respect to its Quarterly Report on Form 10-Q for the fiscal quarter ended September 30, 2023 (the "Form 10-Q"). As disclosed in Denbury Inc.'s Current Report on Form 8-K filed with the United States Securities and Exchange Commission on July 14, 2023, on July 13, 2023 Denbury Inc. entered into an Agreement and Plan of Merger (the "Merger Agreement") with Exxon Mobil Corporation, a New Jersey corporation ("ExxonMobil"), and EMPF Corporation, a Delaware corporation and a wholly-owned subsidiary of ExxonMobil ("Merger Sub"). Upon the terms and subject to the conditions set forth in the Merger Agreement, on November 2, 2023, Merger Sub merged with and into Denbury Inc. (the "Merger"), with Denbury Inc. surviving the Merger as a wholly owned subsidiary of ExxonMobil.

## II.   JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

8.     Plaintiff Giacometto Ranch Inc. is a business incorporated in Montana.

9.     Defendants Denbury Onshore, LLC, Denbury Operating Company, and Denbury Inc. are businesses incorporated in Delaware, with their principal places of business in Texas.  Defendant Exxon Mobile Corporation is a business incorporated in New Jersey, with its principal place of business in Texas.

10.    The monetary value of the matter in controversy exceeds $75,000.00.

11.    Venue is proper in the District of Montana under 28 U.S.C. § 1391(b)(2) because the Giacometto Ranch is located primarily in Powder River County, Montana.

## III.   FACTUAL ALLEGATIONS

### A.   The Giacometto Ranch

12.    Plaintiff owns roughly 20,000 acres of land located in Powder River County, Montana (the "Giacometto Ranch"), a few miles to the southeast of Broadus, Montana.

13.    The Giacometto family has farmed, ranched, and earned a livelihood from the Ranch for generations.

14.    In 1975, the Giacometto family members formed Giacometto Ranch, Inc., and deeded land to the family corporation in order to manage the family ranch.

3

## B.   Related Procedural Background

15.   A prior lawsuit brought by the Giacomettos against Denbury is captioned similarly, having substantially the same Plaintiffs and Defendants. It is being litigated in the United States District Court for the District of Montana, Billings Division. Its case number is 1:16-cv-00145 and is hereinafter referred to as the "Preceding Litigation."

16.   As of the date of filing this Complaint, the Preceding Litigation remains pending.

17.   Based on positions taken and documents disclosed in the Preceding Litigation, the Giacomettos determined that Denbury is trespassing on the Giacometto Ranch as a result of the completion and operation of two wastewater disposal wells.

## C.   Relevant Geological Facts

18.   In the subterranean space underneath the Ranch, there are several geological formations. Each of those formations is identifiable by different characteristics, including age of the formation, depth from the surface, and mineral composition.

19.   The following formations exist beneath the surface of the Giacometto Ranch: the Fox Hills formation, which includes the Fox Hills Freshwater Aquifer; the Pierre Shale; the Shannon Formation; the Niobrara; the Mowry; the Muddy

Formation and the Muddy Sand Formation (collectively, the "Muddy"); the Rozet;

the Skull Creek; Dakota; Lakota; Morrison; Piper; Spearfish, the Minnekhata; and

the Minnelusa.

20.    Two of those formations are relevant to this action: the Muddy

formation and the Minnelusa formation.

21.    The Muddy formation exists at a different depth than the Minnelusa

formation.

22.    The Muddy formation and the Minnelusa formation are separate and

distinct geological formations.

23.    Geologists date the Minnelusa formation to roughly 323 to 251 million

years ago. Geologists date the Muddy formation to 145 to 66 million years ago.

24.    The Minnelusa and Muddy formations were formed more than 100

million years apart from each other.

25.    Between the Minnelusa and Muddy formations, the Rozet, Skull Creek,

Dakota, Lakota, Morrison, Piper, Spearfish, and Minnekhata formations consist of

varying mineral deposits, mostly limestone, sandstones, shales, and siltstones. These

formations between the Minnelusa and Muddy formations are, collectively, around

three thousand feet (3,000') thick. They were formed over the hundreds of millions

of years between the Muddy and Minnelusa formations.

**D.    The Claims in the Preceding Litigation**

26.    Denbury operates the Minnelusa 3 and 4 wells on the surface of the Giacometto Ranch. These wells are completed into the Minnelusa Formation and Defendants use or intend to use those wells for disposal of oilfield waste products into the Minnelusa formation.

27.    In the Preceding Litigation, the Giacomettos claimed that Denbury does not have property rights that allow it to operate the Minnelusa 3 and Minnelusa 4 wells on the Giacometto Ranch within the Minnelusa formation and that the operation of these wells is therefore a trespass.

28.    Denbury responded to this argument by claiming that it has the right to operate the Minnelusa 3 and Minnelusa 4 wells under the Muddy Unit Agreement and its Class II well permits.

29.    The parties fully briefed the issues of trespass and Denbury's assertions of rights to operate the disposal wells on the property based on its permits and the Muddy Unit Agreement in the Preceding Litigation.

30.    The Giacomettos also have separate claims pending for numerous instances of tortious conduct arising out of the operation of these two wells in the Preceding Litigation.

31.    Although dispositive motions were filed on the issues raised by this lawsuit in the Preceding Litigation, this Court found that those claims could not be

litigated in the Preceding Litigation because they had not been sufficiently pleaded before the close of discovery. *See* Doc. No. 161, (*Giacometto Ranch, Inc. v. Denbury Onshore, LLC*, 2022 U.S. Dist. LEXIS 179454,*3-7 (D. Mont. 2022); *see also* Doc. No.166 (Adopting Magistrate's Findings and Recommendations; *Giacometto Ranch v. Denbury Onshore*, LLC, 2022 U.S. Dist. LEXIS 199980 (D. Mont. 2022)).

32.    In its order regarding these wells, the Court indicated that it made no rulings on the viability or merits of the claims, nor on the Plaintiffs' right to the relief implicated by those claims. U.S. Dist. LEXIS 179454, at *6-7. Therefore the Giacomettos are bringing the present complaint in order to assert those claims.

**E.    The Muddy Unit Agreement**

33.    Pursuant to 30 U.S.C. § 181 *et seq*., the Bell Creek Consolidated (Muddy) Unit Agreement (hereafter "Muddy Unit Agreement") was approved by the Bureau of Land Management, United States Department of Interior (BLM) on December 20, 1991 to be effective as of January 1, 1992. A true and correct copy of this approval and the Muddy Unit Agreement and the agreement itself is attached to this Complaint as Exhibit A.

34.    Pursuant to Sections 82-11-204, MCA, *et seq*. in Order No. 71-91 in Docket 88-91, the Board of Oil and Gas Conservation of the State of Montana ("MTBOG") approved "the application of Exxon Corporation for an order providing of the operation as a unit of the Muddy Formation" underlying certain lands

described in the Order. A true and correct copy of this Order is attached to this Complaint as Exhibit B.

35.     The Muddy Unit Agreement was designated by the BLM with contract number MTM 78154X.

36.     As indicated in the letter from the BLM approving the Muddy Unit Agreement: "Only the Muddy formation, as defined in Section 4 of the unit agreement, is unitized."

37.     The Muddy Unit Agreement further identified the "Muddy Formation" or "Muddy Sand Formation" (hereafter, the "Muddy Formation") as the sole geological formation that would be used by Unit Operators acting pursuant to the Muddy Unit Agreement.

38.     The Muddy Unit Agreement refers to the Muddy Formation as the "Unitized Formation."

39.     The Muddy Unit Agreement identified and located the Muddy Formation by legal description and by the subterranean depth dimensions of the Muddy Formation.

40.     The Muddy Unit Agreement includes only depths between four thousand, three hundred thirty-three feet (4,333'), as the "top" of the Muddy Formation, and four thousand, six hundred and forty-six feet (4,646'), as the "bottom" or "base" of the Muddy Formation.

8

**F.     The Minnelusa 2 Well**

41.     The Minnelusa 2 well is a water source well operated by Denbury on the Plaintiffs' Ranch.

42.     The Minnelusa 2 well has API number 25075218940000, and is located in Township 8S, Range 54E, in Section 21, NESENE, and on the Giacometto Ranch.

43.     On April 8, 1970, the Samuel Gary Company filed a Notice of Intent to Drill the "Madison #2" well with the MTBOG.

44.     The Samual Gary Company drilled and spudded the Madison 2 well for use as a water extraction well. Drilling began on April 8, 1970, and was completed on May 7, 1970.

45.     On May 8, 2013, MTBOG received an application from Denbury Onshore, LLC to convert the Madison 2 well into a Class II wastewater disposal well with the intent of injecting into the Madison formation. MTBOG approved the application but attached some conditions, one requiring Denbury to receive an aquifer exemption from the EPA.

46.     The EPA denied Denbury an aquifer exemption for the Madison formation and the permit was revoked on April 30, 2014.

47.     On July 1, 2014, Denbury reapplied for conversion of the well, this time with plans to inject into the Minnelusa formation. The MTBOG approved the application, again with the condition of obtaining an aquifer exemption from the

EPA because the Minnelusa formation also contains potable water. At the same time, Denbury requested a name change from "Madison 2" to "Minnelusa 2."

48.    The EPA approved the aquifer exemption, and in September of 2014, Denbury completed the well work to abandon the Madison zone and convert the Madison 2 water extraction well to the Minnelusa 2 disposal well in the Minnelusa formation.

49.    According to MTBOG records, Denbury injected 13,645,961 barrels of water into the Minnelusa formation until the Minnelusa 2 was converted back into a water source well in May of 2022.

50.    The Giacomettos did not consent to Denbury's operation of the Minnelusa 2 well for disposing substances into the Minnelusa formation.

**G.    The Minnelusa 3 Well**

51.    The Minnelusa 3 well is a Class II wastewater disposal well operated by Denbury on the Plaintiffs' Ranch.

52.    The Minnelusa 3 well has API number 25075219410000, and is located in Township 8S, Range 54E, in Section 29, SESW, and on the Giacometto Ranch.

53.    The Preceding Litigation involves several claims arising out of Denbury's operation of the Minnelusa 3.

54.    Those Preceding Litigation claims involve, *inter alia*, various acts of deception and tortious operation of the well including spills and leaks of hazardous

substances; aspects of the well's operation and existence that interfere with the Giacomettos' ability to enjoy their property; and threats to the Giacomettos' surface estate and water supply arising out of leaks in the well's casing.

55.     On December 9, 1971, the Gary Operating Company filed a Notice of Intent to Drill the "Madison #3" well with the MTBOG.

56.     The Gary Operating Company drilled and spudded the Madison 3 well for use as a water extraction well. Drilling began on March 4, 1972, and completed on March 28, 1972.

57.     On March 25, 2014, MTBOG received an application from Denbury to convert the Madison 3 well into a Class II wastewater disposal well, and to rename the well as the "Minnelusa 3" disposal well. MTBOG later granted the application.

58.     Denbury was also required to obtain an aquifer exemption from the U.S. Environmental Protection Agency authorizing it to inject into the Minnelusa formation because the Minnelusa formation contains potable water.

59.     In May of 2014, Denbury began working on the conversion of the Madison 3 extraction well into the Minnelusa 3 injection well.

60.     The Giacomettos never consented to the conversion of the Minnelusa 3 to a wastewater disposal well injecting into the Minnelusa formation.

61.     Denbury's employees working on the conversion struggled for nearly five months to complete the conversion due in part to the well's poor casing.

62.    In September of 2014 and near the end of the conversion process, Denbury perforated the casing at or near six thousand three hundred forty-eight feet of depth from the surface (6,348').

63.    Denbury thereafter began injecting wastewater and unknown substances into the Minnelusa formation.

64.    Denbury disposed of unknown quantities and types of substances into the Minnelusa formation.

65.    There is no accurate way of determining the quantity or type of substances that Denbury put into the Minnelusa 3 during injection operations because Denbury employees intentionally circumvented the legally required means of tracking the volumes and types of substances injected through the Minnelusa 3.

**H.    The Minnelusa 4 Well**

66.    Like the Minnelusa 3, several separate claims in the Preceding Litigation are premised on facts involving Denbury's drilling and operation of the Minnelusa 4 well, including that it was not reasonably necessary to locate the Minnelusa 4 on its forested hillside, destruction of a critical water reservoir, and other claims.

67.    The Minnelusa 4 well has API number 25075224420000, and is located in Township 8S, Range 54E, in Section 15, NWNE, and on the Giacometto Ranch.

68.    Denbury began drilling the Minnelusa 4 well on September 25, 2014.

69.     Denbury was required to obtain a Class II waste disposal permit in order to operate the Minnelusa 4 well.

70.     Denbury was also required to obtain an aquifer exemption from the U.S. Environmental Protection Agency authorizing it to inject into the Minnelusa formation because the Minnelusa formation contains potable water.

71.     Denbury drilled the Minnelusa 4 well to a depth of at least six thousand, six hundred and eighty-two feet (6,982').

72.     Under the Minnelusa 4 well, the Muddy formation exists at a depth of approximately four thousand, five hundred thirty-five feet (4,535').

73.     The Minnelusa formation lies at a depth of six thousand, three hundred twenty-eight feet (6,328') beneath the Minnelusa 4.

74.     Denbury perforated the Minnelusa 4 casing at depths ranging from six thousand, three hundred sixty (6,360') to six thousand, four hundred seventy-four feet (6,474').

75.     Denbury has and continues to inject substances into the Minnelusa formation.

76.     The Giacomettos did not consent to Denbury's operation of the Minnelusa 4 well for disposing substances into the Minnelusa formation.

## IV.  CLAIM

### 1.  Trespass

77.   The Minnelusa 2, Minnelusa 3, and Minnelusa 4 wells have been used by Defendants to inject substances into the Minnelusa formation.

78.   The Minnelusa 3 and Minnelusa 4 wells continue to be used by Defendants to inject substances into the Minnelusa formation.

79.   Defendants do not have consent from Plaintiff to operate the Minnelusa 2, Minnelusa 3, or Minnelusa 4 or to inject substances into the Minnelusa formation.

80.   Defendant's operation of the Minnelusa 2, Minnelusa 3, and Minnelusa 4 as disposal wells injecting substances into the Minnelusa formation constitutes a continuous trespass in violation of the Giacometto Ranch's ownership and possessory rights.

81.   Equitable relief in the form of an injunction requiring Defendants to cease injecting substances through the Minnelusa 2, Minnelusa 3, and Minnelusa 4 into the Minnelusa formation is proper because damages are inadequate to address an intentional, malicious, and continuing trespass.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief from this Court as follows:

I.      A permanent injunction requiring Defendants to cease future injections of substances through the Minnelusa 2, Minnelusa 3, and Minnelusa 4 wells into the Minnelusa formation; and

II.      for damages arising from past trespassory injections into the Minnelusa formation as asserted herein; and

III.      for costs associated with this litigation; and

IV.      for such other legal or equitable relief as deemed necessary and just by this Court.

## VI.   DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action as to all issues so triable.

Dated: November 22, 2023

Respectfully submitted,

*/s/ Derrick Braaten*

Derrick Braaten (*pro hac vice*)
Kai B. Thorsgard (MT #14033)
**BRAATEN LAW FIRM**
109 North 4th Street, Suite 100
Bismarck, ND 58501
Phone: 701-221-2911
derrick@braatenlawfirm.com
kai@braatenlawfirm.com

Matthew J. Kelly
**TARLOW, STONECIPHER,**
**WEAMER, & KELLY, PLLC**
1705 West College St.
Bozeman, MT 59715
Telephone: 406-586-9714
Fax: 406-586-9720
mkelly@lawmt.com

*Attorneys for Giacometto Ranch*

16